STATE of Minnesota, Respondent,

v.

Leonard NMN GOODLOE, Appellant.

No. A05–1519.

Supreme Court of Minnesota.

July 27, 2006.

*Redevelopment Auth.*, 706 N.W.2d 220, 224 (Minn.2005), which was specific to the parties and issues involved in that case.

John Stuart, State Public Defender, Susan Andrews, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

A jury found appellant Leonard Goodloe guilty of first-degree premeditated murder for the shooting death of Akeen Brown.[1] Goodloe appeals his conviction, arguing that (1) the evidence was insufficient to prove the element of premeditation beyond a reasonable doubt; (2) the district court's jury instruction regarding premeditation constituted plain error; and (3) the district court plainly erred when it failed to sua sponte instruct the jury on the lesser-included offense of second-degree intentional murder. Goodloe also presents three additional arguments in a pro se supplemental brief: (1) the district court's admission of *Spreigl* evidence was error; (2) Goodloe was not promptly brought before the district court after his arrest; and (3) the district court that made the probable cause determination after Goodloe's arrest lacked authority to do so. We affirm.

At approximately 9 p.m. on July 22, 2004, Akeen Brown—the victim—and several other individuals were standing outside the front door of Big Stop Foods, a north Minneapolis grocery store. A vehicle pulled up to the corner of the store, and an individual, later identified by eyewitnesses as Goodloe, left the vehicle. The individual took a gun from under the driver's seat of the vehicle and waved the gun at the group standing in front of Big Stop. Brown ran into Big Stop through the front door and headed toward the back of the store.

A few seconds after Brown ran into Big Stop, the gunman entered the store. Once inside, the gunman paused and said something to the effect of "where he go, where he go" or "where he at, where he at." The gunman then ran to the back of the store, and witnesses heard gunshots coming from the office area at the rear of the store. After the shooting, the gunman ran out of the store, got into his car, and drove off.

Minneapolis police responded to a 911 call indicating that shots had been fired at Big Stop. Upon arrival, police officers found Brown dead from three gunshot wounds to the head in the office at the back of the store. A police officer testified that the office door appeared to have been forced open.[2] Police located seven discharged gun cartridge casings in the store, four of which were found in the office. An

---

1. The jury also found Goodloe guilty of unlawful possession of a firearm.

2. A Big Stop employee testified that the office door was not damaged prior to the shooting.

officer with the police crime lab unit determined that a .357 caliber firearm had been used in the shooting.

On October 11, 2004, a vehicle driven by Goodloe ran a red light and collided with another vehicle at a north Minneapolis intersection. A police officer saw Goodloe attempt to climb out of his vehicle through the passenger window with a gun in his hand. The officer ordered Goodloe to drop the gun and placed him under arrest. During the arrest, the officer observed two guns inside Goodloe's vehicle, one of which was a .357 caliber Coonan semiautomatic. A subsequent search of Goodloe's residence uncovered .357 caliber ammunition in the basement.

Ballistics testing of the Coonan firearm found in Goodloe's vehicle revealed that it was the gun used in the Big Stop shooting. Kristin Reynolds of the Minneapolis police crime lab unit testified that each of the seven cartridge casings found at Big Stop after the shooting had been fired from the Coonan recovered from Goodloe's vehicle. Reynolds further testified that she was able to match a bullet fragment recovered from Brown's head with the Coonan, conclusively establishing that the bullet had been fired from that particular gun.

Upon discovering that the Coonan linked Goodloe to the Big Stop shooting, police composed a photographic lineup that included Goodloe's photograph. From the lineup, two witnesses who had been at Big Stop at the time of the shooting unequivocally identified Goodloe as the gunman. In addition, three other witnesses to the shooting qualifiedly identified Goodloe as the gunman.[3]

Craig Thrane, a forensic video analyst, presented additional evidence at trial linking Goodloe to the Big Stop shooting. Thrane analyzed images of the gunman's vehicle captured on Big Stop's security camera and determined that the features of the vehicle were consistent with those of a late-model Mitsubishi Galant. Thrane testified that he was unable to identify any other vehicle model that bore the same similarities as the Galant to the vehicle in the security video. Subsequently, police learned that Goodloe had rented a 1999 Mitsubishi Galant on July 6, 2004, and had returned the Galant the day after the Big Stop shooting.

A grand jury returned an indictment charging Goodloe with first-degree premeditated murder, Minn.Stat. § 609.185(a)(1) (2004), and unlawful possession of a firearm, Minn.Stat. § 624.713, subds. 1(b), 2(b) (2004). After a trial at which Goodloe did not testify or present any witnesses, a jury found him guilty as charged. The district court entered a first-degree murder conviction and sentenced Goodloe to life imprisonment. This direct appeal followed.

I.

Goodloe first contends that the evidence presented at trial was insufficient to prove the element of premeditation beyond a reasonable doubt. "When reviewing a claim of evidentiary insufficiency, we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any [contrary evidence]." *State v. Leake,* 699 N.W.2d 312,

---

3. Shawna Slack, a customer at Big Stop at the time of the shooting, testified that she was 80% certain that Goodloe was the gunman. Sean Cooley, a Big Stop employee, stated that of all the photographs he had been shown by police, Goodloe most closely resembled the gunman. Cooley testified that he was "almost one hundred [percent]" certain that Goodloe was the gunman. Stephen Watkins, also a Big Stop employee, told police that Goodloe's photograph looked familiar, and, at trial, Watkins testified that he recognized Goodloe as having been the gunman at Big Stop.

319 (Minn.2005). "The verdict will not be overturned if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Id.*

■■■ A person who "causes the death of a human being with premeditation and with intent to effect the death of the person or of another" is guilty of first-degree murder. Minn.Stat. § 609.185(a)(1). Premeditation means "to consider, plan or prepare for, or determine to commit, the act * * * prior to its commission." Minn. Stat. § 609.18 (2004). "A finding of premeditation does not require proof of extensive planning or preparation to kill, nor does it require any specific period of time for deliberation." *State v. Cooper*, 561 N.W.2d 175, 180 (Minn.1997). The state, however, must prove that before the commission of the act but after the defendant formed the intent to kill some appreciable time passed during which the defendant considered, planned, or prepared to commit the act. *Leake*, 699 N.W.2d at 319.

■■■ "Premeditation is a state of mind and, thus, generally proven through circumstantial evidence." *Id.* "Circumstantial evidence is entitled to the same weight as any other evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Id.*

■■■ "[A] defendant's actions before and after the murder are relevant to the question of premeditation." *Id.* at 321. We have recognized three categories of evidence relevant to an inference of premeditation: (1) planning activity, i.e., "facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing"; (2) motive evidence, i.e., "facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred"; and (3) evidence as to the nature of the killing, i.e., facts "from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design." *State v. Moua*, 678 N.W.2d 29, 40–41 (Minn.2004) (emphasis omitted) (quoting *State v. Moore*, 481 N.W.2d 355, 361 (Minn.1992)).

■■■ The record in this case contains sufficient evidence of premeditation. Goodloe arrived at Big Stop with a loaded gun in his vehicle, procured the gun from under the driver's seat upon leaving the vehicle, and approached Brown with the gun extended in front of him. Evidence showing prior possession of the murder weapon can lead to an inference of premeditation. *State v. Chomnarith*, 654 N.W.2d 660, 665 (Minn.2003).

In addition, Goodloe deliberately followed Brown into Big Stop, and footage from Big Stop's security camera shows Goodloe chambering a round in his gun as he entered the store, preparing the gun to be fired. Once inside the store, Goodloe paused to ask, "where he go, where he go?" Goodloe then pursued Brown through the store to the office at the rear and, upon reaching the office, forced the door open to gain access to Brown. The time between Goodloe's arrival at the store and the shooting, during which Goodloe pursued Brown with a loaded gun, constitutes an appreciable period of consideration and preparation for the killing, justifying the jury's finding of premeditation. *See Moore*, 481 N.W.2d at 361.

■■■ The nature of the killing in this case also supports an inference of premeditation. We have recognized that the num-

ber of times a defendant used the murder weapon and the number of wounds inflicted are relevant to determining the nature of the killing. *Moua*, 678 N.W.2d at 41. Thus, evidence of multiple gunshot wounds can support a finding of premeditation. *Id.* at 39. We have also said that premeditation can be inferred from evidence showing "that 'wounds were deliberately placed at vital areas of the body.'" *Chomnarith*, 654 N.W.2d at 665 (quoting *Moore*, 481 N.W.2d at 361). Here, Brown sustained three gunshot wounds to the head, indisputably a vital area. One of the three wounds was inflicted when the shooter was no more than four feet away from Brown. Further, Goodloe fired a total of seven shots while inside the store. Given the totality of the evidence presented at trial, a jury could reasonably have concluded that Goodloe formed an intent to kill an appreciable period of time before he committed the murder, during which time he considered, planned, prepared, or determined to commit the murder.[4] We therefore hold that the evidence adduced at trial was sufficient to prove the element of premeditation beyond a reasonable doubt.

## II.

■■■■ Goodloe next contends that the jury instruction on premeditation constituted plain error affecting his substantial rights. The district court instructed the jury on the element of premeditation using the pattern jury instruction for first-degree premeditated murder. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.02 (4th ed.1999) [hereinafter CRIMJIG

11.02]. The instruction given at trial provided:

Premeditation means that the defendant considered, planned, prepared for, or determined to commit the act before the defendant committed it.

Premeditation, being a process of the mind is wholly suggestive,[5] and hence, not always susceptible to proof by direct evidence. It may be inferred from all the circumstances surrounding the event. It is not necessary that premeditation exist for any specific length of time.

A premeditated decision to kill may be reached in a short period of time, however, an unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated.

Goodloe argues that the district court's use of the pattern premeditation instruction was erroneous because the instruction misstates the law. Specifically, Goodloe contends that the instruction does not adequately explain that some appreciable time must have passed after the defendant formed the intent to kill but before the murder was committed during which the defendant considered, planned, or prepared for the murder.

■■■■ Goodloe acknowledges that he did not object to the premeditation instruction at trial. A defendant's failure to object to instructions before they are given to the jury generally results in forfeiture of the issue on appeal. *State v. Earl*, 702 N.W.2d 711, 720 (Minn.2005). Nonetheless, we have discretion to consider a jury instruction not objected to at trial if it is plain error affecting substantial rights.

---

4. While it is true that the state offered no evidence of Goodloe's motive for killing Brown, we have never held that the state must present evidence from each of the three categories relevant to premeditation in order to support a finding of premeditation.

5. In CRIMJIG 11.02, this word is "subjective," not "suggestive." It appears that either the district court judge misspoke, or the word was improperly transcribed by the court reporter. Goodloe does not challenge this mistaken wording.

Minn. R.Crim. P. 31.02; *Earl,* 702 N.W.2d at 720; *State v. Griller,* 583 N.W.2d 736, 742 (Minn.1998). We apply a three-prong test for plain error, requiring that there be (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights. *Griller,* 583 N.W.2d at 740. To satisfy the second prong, the error must be plain at the time of the appeal. *State v. Ihle,* 640 N.W.2d 910, 917 (Minn.2002). The third prong of the test is satisfied if "the error was prejudicial and affected the outcome of the case." *Griller,* 583 N.W.2d at 741. If the three prongs of the test are met, "the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* at 740. We will correct the error "only if the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *State v. Morton,* 701 N.W.2d 225, 234 (Minn.2005).

 District courts have considerable latitude in selecting language for jury instructions. *State v. Moore,* 699 N.W.2d 733, 736 (Minn.2005). "Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case." *Ihle,* 640 N.W.2d at 916. A jury instruction is erroneous if it materially misstates the law. *Moore,* 699 N.W.2d at 736.

In *State v. Martin,* we upheld the pattern jury instruction on premeditation. 261 N.W.2d 341, 345 (Minn.1977). We noted that the instruction incorporated the statutory definition of premeditation and accurately reflected existing case law and was therefore not error. *Id.* Subsequently, in a 1988 case, we again expressed approval of the pattern premeditation instruction. *State v. Flores,* 418 N.W.2d 150, 156 (Minn.1988) (indicating that it would have been preferable for the district court to have used CRIMJIG 11.02 instead

of the premeditation instruction actually given).

Though we have not directly addressed the validity of the pattern premeditation instruction since *Martin,* the instruction continues to accurately state the law. The first sentence of the instruction tracks almost word-for-word the statutory definition of premeditation found in Minn.Stat. § 609.18, and the other parts of the instruction correctly summarize our case law on premeditation. *See Leake,* 699 N.W.2d at 319; *Moua,* 678 N.W.2d at 39.

Goodloe appears to take issue primarily with the part of the instruction that states that premeditation need not exist for a specific period of time and that "[a] premeditated decision to kill may be reached in a short period of time." CRIMJIG 11.02. Goodloe contends that our decision in *State v. Moore,* 481 N.W.2d 355 (Minn. 1992), altered the definition of premeditation such that these parts of CRIMJIG 11.02 no longer accurately state the law.

In *Moore,* we disapproved of our statement in prior cases that premeditation can be formed "virtually instantaneously," noting that such a statement blurs the line between premeditation and intent to kill. *Moore,* 481 N.W.2d at 360–61. We concluded that proof of premeditation requires that the state show "some appreciable time" passed after the defendant formed the intent to kill but before the murder took place, during which the defendant considered, planned, prepared for, or determined to commit the murder. *Id.* at 361. But we specifically noted that this conclusion was not at odds with our statement in previous cases that "premeditation requires no specific period of time for deliberation." *Id.* at 361 n. 4. Thus, *Moore* itself affirmed the validity of the part of CRIMJIG 11.02 that provides, "[i]t is not necessary that premeditation exist for any specific length of time." Moreover, in

cases decided after *Moore,* we have consistently said that a finding of premeditation does not require a specific length of time for deliberation. *See Leake,* 699 N.W.2d at 319; *State v. Fields,* 679 N.W.2d 341, 348 (Minn.2004). Further, the part of CRIMJIG 11.02 that provides, "an unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated," is consistent with our rejection in *Moore* of the notion that premeditation can be formed "virtually instantaneously."

Our conclusion in *Moore* that some appreciable time must pass during which the planning, preparation, deliberation, or consideration required by Minn.Stat. § 609.18 occurs does not conflict with the statement in CRIMJIG 11.02 that premeditation may be formed in a "short period of time." The American Heritage Dictionary defines "appreciable" as "[p]ossible to estimate, measure, or perceive." The American Heritage Dictionary of the English Language 88 (4th ed.2000); *see also* Black's Law Dictionary 110 (8th ed.2004) (defining "appreciable" as "[c]apable of being measured or perceived"). Thus, even a "short period of time" constitutes "some appreciable time," and the use of the phrase "a short period of time" in CRIMJIG 11.02 is not a misstatement of the law as it stands following *Moore.* Because the pattern jury instruction on premeditation accurately states the law, we hold that the district court did not err in instructing the jury using the pattern instruction.

## III.

■ Goodloe asserts that the district court committed plain error when it failed to instruct the jury on the lesser-included offense of second-degree intentional murder. Second-degree intentional murder is a lesser-included offense of first-degree premeditated murder because "[a]n included offense includes a lesser degree of the same crime." *State v. Dahlin,* 695 N.W.2d 588, 597 (Minn.2005); *see also* Minn.Stat. § 609.04, subd. 1(1) (2004); *State v. Hannon,* 703 N.W.2d 498, 509 (Minn.2005).

At Goodloe's trial, the district court instructed the jury on the elements of the two charged offenses—first-degree premeditated murder and prohibited person in possession of a firearm—and gave no lesser-included-offense instructions. Instead, the court told the jury, "If you find that any element [of first-degree premeditated murder] has not been proved beyond a reasonable doubt, the defendant is not guilty of murder."

■ The parties agree that Goodloe did not request a second-degree-intentional-murder instruction at trial. Failure to request specific jury instructions or to object to instructions given generally results in forfeiture of the issue on appeal. *Earl,* 702 N.W.2d at 720; *see also State v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn. 2001). But we have discretion to consider a district court's failure to give a jury instruction if the failure constitutes plain error affecting substantial rights. *See* Minn. R.Crim. P. 31.02; *Crowsbreast,* 629 N.W.2d at 437.

■ In *State v. Dahlin,* we said that "absent plain error affecting a defendant's substantial rights, a trial court does not err when it does not give a warranted lesser-included instruction if the defendant has impliedly or expressly waived that instruction." 695 N.W.2d at 598. Failure to request a lesser-included-offense instruction is an implied waiver[6] of the defendant's right to the instruction. *State v.*

---

**6.** Though we have typically used the phrase "implied waiver" in this context, "forfeiture" is perhaps a more accurate term. *See United*

*States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (distinguishing between forfeiture and waiver).

*Penkaty,* 708 N.W.2d 185, 208 (Minn.2006); *Dahlin,* 695 N.W.2d at 597–98. Here Goodloe impliedly waived, or forfeited, his right to have a second-degree-intentional-murder instruction submitted to the jury by failing to request the instruction.

 And, in any event, an instruction on second-degree intentional murder was not warranted by the evidence in this case. We have held that a lesser-included-of-fense instruction is warranted when "1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense." *Dahlin,* 695 N.W.2d at 598. "In making these determinations, the court must view the evidence in the light most favorable to the requesting party and must not weigh the evidence or make credibility determinations." *Penkaty,* 708 N.W.2d at 205.

Here, Goodloe cannot show that there was a rational basis for convicting him of second-degree intentional murder, the lesser-included offense he claims should have been submitted to the jury. The element of premeditation differentiates first-degree premeditated murder from second-degree intentional murder. *See* Minn.Stat. §§ 609.185(a)(1), 609.19, subd. 1(1) (2004). Premeditation means "to consider, plan or prepare for, or determine to commit, the act * * * prior to its commission." Minn.Stat. § 609.18.

 As we recognized in *Dahlin,* "a lesser-included offense instruction need not be given if *no* evidence is adduced to support giving the * * * instruction." *Dahlin,* 695 N.W.2d at 595. In this case,

unlike in *Dahlin,* no evidence was adduced at trial to support a conclusion that Goodloe's intent to kill was an impulse formed just prior to the shooting, with no subsequent consideration, deliberation, planning, or preparation. *See id.* at 600–01. Goodloe's theory at trial was that he was not the perpetrator of the Big Stop shooting—that identity was the critical issue. While a "warranted lesser-included offense instruction cannot be denied on the grounds that it is inconsistent with the defendant's theory of the case," *Hannon,* 703 N.W.2d at 513, neither Goodloe nor the state presented *any* evidence that would have created a rational basis for a jury to conclude that Brown's murder was intentional but not premeditated. The jury had no rational basis for finding that, during the time in which Goodloe drove to Big Stop, took a loaded gun from under the seat of his vehicle, pointed it at Brown, followed him into the store, chambered a round in the gun, pursued Brown to the back office, forced open the office door, and fired seven shots, three of which struck Brown in the head, Goodloe did not consider or prepare for the murder for any perceptible amount of time.[7] Accordingly, we hold that the district court did not err by failing to sua sponte instruct the jury on second-degree intentional murder. Because there was no error, much less plain error affecting substantial rights, Goodloe's claim regarding the lesser-included-offense instruction fails.

### IV.

Goodloe raises three additional claims in a pro se supplemental brief: (1) the district court erred in permitting the admission of *Spreigl* evidence; (2) Goodloe was not promptly brought before the district

---

**7.** While it is theoretically possible that the jury could have believed all of the state's evidence except the evidence relevant to pre-

meditation, we cannot discern any rational basis for the jury to have done so.

court after his arrest, in violation of Minn. R.Crim. P. 4.02, subd. 5, 4.03, subd. 1; and (3) the court making the probable cause determination after Goodloe's arrest lacked authority to do so because the judge was not properly assigned to Goodloe's case. We conclude that none of these claims merit relief.

Goodloe contends that the district court improperly admitted evidence relating to his involvement in a vehicular collision on October 11, 2004, and his unlawful possession of a firearm at that time. Before trial, the state gave Goodloe notice of its intent to present evidence of his involvement in an armed robbery on October 11, 2004, his subsequent flight from police, the resulting vehicular collision, and his unlawful possession of the Coonan at that time. Defense counsel objected to admission of evidence of the robbery, but agreed that testimony regarding the collision and Goodloe's possession of the Coonan could be admitted.

At trial, two witnesses testified that Goodloe emerged from his vehicle after the collision with a gun in his hand, and two police officers testified that they found two guns in Goodloe's vehicle after the collision. The state did not present any testimony about Goodloe's involvement in a robbery prior to the collision. At the end of the state's case-in-chief, defense counsel expressed concern that the state had improperly introduced *Spreigl* evidence regarding Goodloe's unlawful possession of a firearm on October 11, but asked that the court not give a precautionary instruction to the jury to avoid drawing attention to the evidence.[8] Because defense counsel agreed that evidence of Goodloe's posses-

sion of the Coonan on October 11 was admissible and specifically requested that the court not give a cautionary instruction regarding the proper use of the *Spreigl* evidence, Goodloe has waived his right to contest the admission of the evidence or the absence of a cautionary instruction, unless the district court committed plain error or error of fundamental law. *See State v. Gisege,* 561 N.W.2d 152, 158 n. 5 (Minn.1997).

It was not error for the district court to refrain from giving a cautionary instruction because defense counsel's request that the court not give the instruction reflected a decision of trial strategy, which the court was not free to override. *See State v. Washington,* 693 N.W.2d 195, 205 (Minn.2005). In addition, the testimony regarding Goodloe's possession of a gun on October 11 plainly was admissible *Spreigl* evidence. *Spreigl* evidence is admissible if: (1) the state gives notice of its intent to present the evidence; (2) the state indicates clearly what the evidence will be offered to prove; (3) there is clear and convincing evidence that the defendant participated in the other act; (4) the *Spreigl* evidence is relevant and material to the state's case; and (5) the probative value of the *Spreigl* evidence is not outweighed by its potential to unfairly prejudice the defendant. *State v. Ness,* 707 N.W.2d 676, 686 (Minn.2006). Here, the state complied with the *Spreigl* evidence procedural requirements, and the evidence was highly relevant to the state's case because the Coonan was the key piece of physical evidence linking Goodloe with Brown's murder. The evidence was not unfairly prejudicial because it did not

---

**8.** Although witnesses did not directly state that Goodloe unlawfully possessed a firearm on October 11, the *Spreigl* concern with the testimony appears to have been that the jury may have inferred that Goodloe's possession

of the Coonan on October 11 was unlawful from evidence presented at trial showing that Goodloe was prohibited from possessing a firearm on July 22.

" 'persuade by illegitimate means' " or lead the jury to reach a verdict on an improper basis. *State v. Townsend,* 546 N.W.2d 292, 296 (Minn.1996) (quoting *State v. Cermak,* 365 N.W.2d 243, 247 n. 2 (Minn.1985)). Accordingly, the district court did not err in admitting the testimony regarding the October 11 incident.

Goodloe claims that he was not afforded a prompt appearance before a judge pursuant to Minn. R.Crim. P. 4.02, subd. 5, or a prompt probable cause determination as required by Minn. R.Crim. P. 4.03, subd. 1. Goodloe asserts that he was arrested without a warrant on October 21, 2004, and was not taken before a judge until November 4, 2004.

The validity of these claims cannot be ascertained on the basis of the record before us. An appellant has the responsibility of providing an appellate court with a record adequate for review. *See State v. Anderson,* 351 N.W.2d 1, 2 (Minn.1984); *see also Grinolds v. Indep. Sch. Dist. No. 597,* 346 N.W.2d 123, 128 (Minn.1984) ("Appellate review is limited to the record."). Here, the record on appeal contains no documentation indicating when Goodloe was arrested for the Big Stop shooting, when the district court made the probable cause determination required by Rule 4.03, or when Goodloe was brought before the court as required by Rule 4.02. Thus, we cannot determine whether the prompt appearance and probable cause determination requirements of Rules 4.02 and 4.03 were satisfied.

Goodloe's final claim is that the judge who made the probable cause determination in his case was not properly assigned to the case pursuant to the retired judge assignment process outlined in Minn.Stat. § 2.724, subd. 3 (2004). Again, the record provided for our review does not furnish sufficient documentation to permit resolution of this claim. Specifically, the record does not contain the order assigning the judge to Hennepin County District Court or to Goodloe's case. Consequently, we cannot address the merits of this claim.

Affirmed.