# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0005

State of Minnesota,
Respondent,

vs.

Robin Lyne Hensel,
Appellant.

**Filed January 25, 2016**
**Affirmed**
**Larkin, Judge**

Morrison County District Court
File No. 49-CR-13-869

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Paul D. Reuvers, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent)

Kevin C. Riach, David D. Coyle, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

## S Y L L A B U S

Minn. Stat. § 609.72, subd. 1(2) (2012), is not void for vagueness or facially overbroad in violation of the First Amendment to the United States Constitution.

**O P I N I O N**

**LARKIN**, Judge

On appeal from her conviction of disorderly conduct for disturbing a city council meeting, appellant argues that (1) Minn. Stat. § 609.72, subd. 1(2), violates the First Amendment, (2) the district court erred by denying her requested jury instructions, and (3) the evidence is insufficient to support her conviction. We affirm.

**FACTS**

Appellant Robin Lyne Hensel is a retired resident of the City of Little Falls. Hensel regularly attends Little Falls City Council meetings. Council meetings take place at the Little Falls City Hall in a room that has a raised dais where the council sits. Members of the public sit in chairs that are set out by the public works director. On some occasions, tables and chairs have been set up in the area between the dais and public-seating area to accommodate work sessions before the council meeting. Typically the extra chairs are removed before the council meeting begins.

The events underlying this appeal took place at the council's meetings on June 3 and 7, 2013. At the June 3 meeting, the work-session tables were set up between the public-seating area and dais. Hensel brought signs to the meeting, which she placed beside the council dais and around her chair in the front row of the public-seating area. She also wore a sign on her head. The mayor's husband was at the meeting, and he asked to sit at the work-session tables. The council president allowed him and other members of the public to come forward and sit in front of Hensel at the work-session tables. Then, immediately

2

after the meeting was called to order, the mayor moved to close the meeting and reconvene at another time. The meeting was rescheduled for June 7 at 9:30 a.m.

On June 7, Hensel arrived at the meeting and seated herself in the front row of the public-seating area. There were no tables and chairs between the dais and the public-seating area that morning. Before the meeting was called to order, Hensel twice moved her chair forward into the area in between the public-seating area and dais where council members were seated. Hensel asserted that she moved her seat forward because of what she believed to be unequal treatment based on events at the June 3 city council meeting.

The first time Hensel moved her seat forward, the public works director moved the chair back and told Hensel, "We set the council chambers up and the chair stays here, please." The second time, the police chief asked Hensel to move her chair back to the public-seating area. She refused, and an exchange of comments ensued among Hensel, the police chief, the city attorney, and city council members. Hensel said that she would compromise, and moved her chair partway back to the public-seating area. When she refused to move her chair any further, the police chief removed her from the meeting. As a result of Hensel's conduct before the June 7 meeting, the council was unable to start the meeting on time.

Respondent State of Minnesota charged Hensel with disorderly conduct for disturbing a public meeting. Hensel pleaded not guilty and moved to dismiss the charge for lack of probable cause and on First Amendment grounds. The district court denied the motion. The district court reasoned that the statute was overbroad in that it reached speech

and expressive conduct protected by the First Amendment, but that it could be narrowly construed to reach only conduct.

The case was tried to a jury. Hensel requested a jury instruction regarding expressive conduct to advise the jury that, if it found that Hensel's conduct consisted only of expressive conduct, it must find that the expressive conduct constituted fighting words to find her guilty. She also requested a jury instruction regarding the First Amendment that would have precluded the jury from finding her guilty if her disturbing conduct was inseparable from protected expression. The district court denied the requests, reasoning that the First Amendment issues were legal issues for the court to decide.

The jury returned a guilty verdict, and the district court denied Hensel's request for a judgment of acquittal. The district court sentenced Hensel to 15 days of stayed jail time and placed her on unsupervised probation to the court for one year. Hensel appeals.

**ISSUES**

I. Did the district court err by denying Hensel's motion to dismiss on First Amendment grounds?

II. Did the district court abuse its discretion by denying Hensel's requested jury instructions?

III. Is the evidence sufficient to support the conviction?

**ANALYSIS**

Hensel was convicted under Minn. Stat. § 609.72, subd. 1(2), which provides that:

> Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:

4

. . . .

> (2) disturbs an assembly or meeting, not unlawful in its character . . . .

Hensel argues that the statute is unconstitutional, that the district court erred in instructing the jury, and that the evidence was insufficient to support her conviction. We address each argument in turn.

**I.**

Hensel first asserts a First Amendment[1] facial challenge to Minn. Stat. § 609.72, subd. 1(2), arguing that it is both vague and overly broad.[2] "To be a constitutional exercise of the police power of the state, a statute that punishes speech must be neither overly broad nor unduly vague." *In re Welfare of S.L.J.*, 263 N.W.2d 412, 417 (Minn. 1978). This court reviews the constitutionality of a statute de novo. *State v. Crawley*, 819 N.W.2d 94, 101 (Minn. 2012).

In a case involving a First Amendment challenge, whether First Amendment concerns are actually implicated is a threshold inquiry. *State v. Stockwell*, 770 N.W.2d

---

[1] Hensel relies on both the First Amendment to the United States Constitution and Article I, Section 3, of the Minnesota Constitution. Because "the Minnesota constitutional right to free speech is coextensive with the First Amendment," *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 516 (Minn. 2012), we refer only to the First Amendment in our analysis.

[2] Hensel has not asserted an as-applied challenge, i.e., that the statute is unconstitutional as applied to her. As our supreme court explained in *Rew v. Bergstrom*, the same substantive test applies regardless of whether a challenge is facial or as-applied. 845 N.W.2d 764, 778, 780 (Minn. 2014). The difference is that a facial challenge seeks to invalidate the entire statute and accordingly requires a higher showing of a substantial number of unconstitutional applications. *See id.* at 778 (explaining that facial challenge differs in "*the showing* required to invalidate a statute, not in the underlying substantive standard that applies to each type of challenge").

533, 537 (Minn. App. 2009), *review denied* (Minn. Oct. 28, 2009). The party asserting First Amendment protection bears the burden in this regard. *Id.* (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5, 104 S. Ct. 3065, 3069 n.5 (1984)). The state asserts that Hensel has not met this burden because "[n]o spoken word or expressive conduct comes under the control of Minn. Stat. § 609.72, subd. 1(2)'s reach." We disagree; the language of the statute is clearly broad enough to encompass both speech and expressive conduct. *See* Minn. Stat. § 609.72, subd. 1(2) (penalizing all conduct that knowingly disturbs a meeting). Hensel has met the threshold burden of demonstrating that First Amendment concerns are implicated in this case.[3]

To succeed on her facial First Amendment challenge, Hensel "must establish that no set of circumstances exists under which [the statute] would be valid, that the statute lacks any plainly legitimate sweep, or that a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Rew*, 845 N.W.2d at 778 (quotations and citations omitted). "We do not evaluate the facial constitutionality of a statute in a vacuum." *Id.*

---

[3] The state also argues that Hensel's particular conduct was not sufficiently expressive to warrant First Amendment protection, and both parties devote significant attention to this issue. But Hensel need not establish that she was engaged in protected speech to support her facial challenge to the statute. *See Dunham v. Roer*, 708 N.W.2d 552, 563 (Minn. App. 2006) (recognizing exception to general standing requirements for facial First Amendment challenges), *review denied* (Minn. Mar. 28, 2006). Even so, we observe that Hensel's conduct was expressive conduct because (1) she intended a message—that she be treated the same as other citizens with respect to seating arrangements, including the mayor's husband—and (2) the circumstances were such that her message was understood. *See Spence v. Washington*, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 2730-31 (1974) (describing expressive conduct). We further observe that Hensel engaged in actual speech, in addition to expressive conduct.

Rather, the task in evaluating a facial challenge is to determine whether a statute is unconstitutional in a substantial number or all of its applications, as the case may be, under the applicable constitutional standard governing challenges of the type brought by the party alleging the unconstitutionality of the statute.

*Id.*

## Minn. Stat. § 609.72, subd. 1(2), is not unconstitutionally vague.

"'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983)).[4]

The [vagueness] doctrine is based on fairness and is not designed to "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

*State v. Enyeart*, 676 N.W.2d 311, 319 (Minn. App. 2004) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 1957 (1972)), *review denied* (Minn. May 18, 2004). "[A] higher standard of certainty of meaning is required" for statutes that impose criminal penalties. *Newstrom*, 371 N.W.2d at 528. But even a criminal statute "need not be drafted

---

[4] A statute can be unconstitutionally vague for "either of two independent reasons": either because it fails to sufficiently inform people of what is proscribed or it authorizes or encourages arbitrary enforcement. *State v. Ness*, 834 N.W.2d 177, 184 (Minn. 2013). These "two due process values . . . tend to coalesce" even if they are "analytically distinct." *United States v. Wivell*, 893 F.2d 156, 159 (8th Cir. 1990).

with absolute certainty or mathematical precision." *Dunham*, 708 N.W.2d at 568 (stating the principle in a case involving a quasi-criminal statute and noting that for purposes of a vagueness analysis, a quasi-criminal statute is tantamount to a criminal one), *review denied* (Minn. Mar. 28, 2006); *see also Enyeart*, 676 N.W.2d at 319 ("The vagueness doctrine does not preclude the use of broad, flexible standards that require persons subject to a statute to exercise judgment."). "Instead, uncertainty invalidates a statute only when those subject to it cannot determine with reasonable certainty whether a particular act is forbidden or permitted." *Enyeart*, 676 N.W.2d at 319 (citing *State v. Kuluvar*, 266 Minn. 408, 417, 123 N.W.2d 699, 706 (1963)).

Applying these principles here, we conclude that Minn. Stat. § 609.72, subd. 1(2), is not void for vagueness. The statute must be construed in context and in light of its intent. *See State v. Hipp*, 298 Minn. 81, 87-88, 213 N.W.2d 610, 614-15 (1973) (rejecting vagueness challenge to public-assembly statute after examining its context and intent). Although not defined by the statute, the term "disturb" is commonly understood to mean "[t]o break up or destroy the tranquility, order, or settled state of." *American Heritage Dictionary* 525 (5th ed. 2011); *see also Black's Law Dictionary* 546 (9th ed. 2009) (defining "disturbance of a public meeting" as "[t]he unlawful interference with proceedings of a public assembly"). Thus, viewed in context, the statute can be understood by persons of common intelligence as prohibiting conduct that could be expected to interfere with the ability to conduct a meeting.

The fact that Minn. Stat. § 609.72, subd. 1(2), does not specifically itemize what conduct disturbs a meeting does not compel the conclusion that it is vague. *See Dunham*,

708 N.W.2d at 569 (explaining that a criminal statute "need not be drafted with absolute certainty or mathematical precision"). Rather, as our supreme court recognized in *Hipp*, more specific statutory language may be infeasible:

> Because of the nature of the offense, which contemplates a form of conduct repugnant to good order and not a specific act, the language of the statute must, as a practical necessity, be general to cover the countless variations of [conduct] which can disturb or threaten the public peace.

298 Minn. at 88, 213 N.W.2d at 615; *see also State v. Krawsky*, 426 N.W.2d 875, 878-79 (Minn. 1988) (holding that statute prohibiting interference with peace officer performing duties was not vague and noting that "given the wide variety of circumstances in which the type of conduct [the statute] legitimately seeks to proscribe can occur, it seems unlikely that a substantially more precise standard could be formulated which would not risk nullification in practice because of easy evasion"). Minnesota's approach is consistent with that of other states. *See e.g.*, *State v. McNair*, 135 N.W.2d 463, 465 (Neb. 1965) ("What constitutes a disturbance of a lawful assembly is not susceptible to specific definition, but must depend to some extent upon the nature and the character of the particular assemblage. However, while it may be difficult to specifically define beforehand, there is no problem in determining what constitutes a disturbance in a given case."); *People v. Malone*, 141 N.Y.S. 149, 151 (N.Y. App. Div. 1913) (noting that, although "what shall constitute a disturbance cannot easily be brought within a definition applicable to all cases[,] . . . there is commonly no great difficulty in ascertaining what is a willful disturbance in a given case" (quotation omitted)).

9

Notably, laws prohibiting the disturbance of public meetings are neither unique to Minnesota nor of recent vintage. And such laws are generally construed to "proscribe only those disruptive physical actions and verbal utterances that are in violation of the normal customs and rules of governance, implicit or explicit, of the meeting." 24 Am. Jur. 2d *Disturbing Meetings* § 1 (2008); *see also State v. Linares*, 655 A.2d 737, 744 (Conn. 1995) (construing statutory language proscribing intentional disturbance, disruption, or interference with general assembly proceedings as "limited to actual impediments to the legislative process based on the objective qualities of the conduct"). We conclude that Minn. Stat. § 609.72, subd. 1(2), is subject to a similar, reasonable understanding, and thus is not unconstitutionally vague.[5]

### Minn. Stat. § 609.72, subd. 1(2), is not unconstitutionally overbroad.

As we noted above, determining facial validity requires this court to evaluate whether, assuming the application of appropriate constitutional scrutiny, a substantial number of hypothetical applications of the statute would violate the First Amendment. *Rew*, 845 N.W.2d at 778. There are undoubtedly applications of Minn. Stat. § 609.72,

_____

[5] Although not dispositive to our analysis, we also observe that courts of other jurisdictions have rejected vagueness challenges to similarly worded statutes. *See Linares*, 655 A.2d at 744-45 (rejecting vagueness challenge to statute proscribing intentional disturbance, disruption, or interference with general assembly proceedings, noting that statute prohibited only "actual impediments to the legislative process based on the objective qualities of the conduct"); *State v. Fielden*, 629 S.E.2d 252, 253 (Ga. 2006) (holding not vague statute proscribing knowing or reckless commission of an act which may reasonably be expected to disrupt meeting); *State v. Markovich*, 77 S.W.3d 274, 279 (Tex. Crim. App. 2002) (same for statute prohibiting knowing obstruction or interference, explaining that "[a] person of ordinary intelligence knows the type of conduct that is likely to cause an impairment to the ordinary conduct of a meeting").

subd. 1(2), that will implicate both core speech and expressive conduct. The statute proscribes disturbances of meetings, which certainly could take the form of speaking out of turn, heckling, shouting, chanting, and other forms of oral protest. Disturbances could also take the form of expressive conduct like Hensel's refusal to move her chair in this case. The fact that speech and expressive conduct are implicated, however, does not end the inquiry. It merely prompts the next question, which is whether restrictions on these forms of expression can withstand the applicable constitutional scrutiny. *Id.*

In this case, we conclude that it is appropriate to apply the test for time, place, or manner restrictions articulated by the United States Supreme Court in *Clark*, 468 U.S. at 293, 104 S. Ct. at 3069. The Court has made clear that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981). Time, place, or manner restrictions are "valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 293, 104 S. Ct. at 3069.[6]

---

[6] The Court articulated a similar test in *United States v. O'Brien* for determining the constitutionality of a conduct-regulating statute's incidental restrictions on expressive conduct. 391 U.S. 367, 377, 88 S. Ct. 1673, 1679 (1968). In *Clark*, the Court recognized that the *O'Brien* test, "in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions." 468 U.S. at 298, 104 S. Ct. at 3072.

Hensel does not dispute that Minn. Stat. § 609.72, subd. 1(2), is content neutral. Accordingly, we turn to evaluating whether the statute is narrowly tailored to serve a significant government interest and whether it leaves open ample alternative channels for communication of information.

We have no trouble identifying the governmental interest protected by Minn. Stat. § 609.72, subd. 1(2). The statute protects the ability of governmental officials to do the work of governing. *See Linares*, 655 A.2d at 750-51 (recognizing governmental interest in prohibiting interferences with state general assembly); *Smith-Caronia v. United States*, 714 A.2d 764, 767 (D.C. 1998) (recognizing government interest in not allowing persons to "delay, impede, or otherwise disrupt the orderly processes of the legislature which represents all Americans" (quotation omitted)); *State v. Cephus*, 830 N.E.2d 433, 439 (Ohio Ct. App. 2005) (identifying significant governmental interest as ability of government officials to "conduct official business in an orderly manner without interference or disruption"). The statute also protects the rights of all citizens to meet and participate in government. *See In re Kay*, 464 P.2d 142, 147 (Cal. 1970) ("The constitutional guarantees of the free exercise of religious opinion, and of the rights of the people peaceably to assemble and petition for redress of grievances, would be worth little if outsiders could disrupt and prevent such a meeting in disregard of the customs and rules applicable to it."); *Morehead v. State*, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991) ("[W]e have no doubt that the State has a legitimate, even compelling, interest in ensuring that some individuals' unruly assertion of their rights of free expression does not imperil other citizens' First Amendment freedoms.").

Having identified the significant governmental interest, we next consider whether Minn. Stat. § 609.72, subd. 1(2), is narrowly tailored to serve that interest and whether it leaves open ample other channels of communication. We begin by observing that the statute applies in a very limited context; it only proscribes the disturbance of lawful assemblies or meetings. Minn. Stat. § 609.72, subd. 1(2). Moreover, as we observe above, this proscription is reasonably understood to reach only conduct (including speech) that would be expected to interfere with the ability to conduct a meeting. *See id.* Furthermore, the statute penalizes only conduct that is *intended* to cause a disturbance. *See* Minn. Stat. §§ 609.02, subd. 9(1) (2012) ("When criminal intent is an element of a crime in this chapter, such intent is indicated by . . . some form of the verbs "know" or "believe.""); 609.72, subd. 1 (requiring that the actor "[know], or [have] reasonable grounds to know that [her conduct] will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace").

Based on all of the foregoing, we conclude that Minn. Stat. § 609.72, subd. 1(2), is narrowly tailored to serve significant governmental interests. *See Krawsky*, 426 N.W.2d at 877 (concluding that statute prohibiting interference with peace officer performing duties was not overly broad because the statutory prohibition was limited to conduct obstructing or interfering with police officer performing duties and required that actor intend to obstruct or interfere); *see also Smith-Caronia*, 714 A.2d at 767 (concluding that statute precluding intentional disturbance of congressional sessions was narrowly tailored because it "restrict[ed] the prohibited conduct to loud speech and other acts both of a nature to and

13

specifically intended to disrupt the business of Congress").[7]  We also conclude that the

statute leaves open ample other channels of communications.  Citizens like Hensel are free

to communicate their dissatisfaction with their government in a variety of ways, as long as

those communications do not disturb lawful meetings.

We are cognizant that some courts, including the district court in this case, have

concluded that statutes proscribing disturbances of meetings are overly broad and must be

accorded a narrowing construction to survive constitutional scrutiny.  *See Morehead*, 807

S.W.2d at 581 (construing statute to "criminalize only physical acts or verbal utterances

that *substantially* impair the ordinary conduct of lawful meetings and thereby curtail the

exercise of other's First Amendment rights").  Given our interpretation of the statute, we

do not believe that a narrowing construction is required.  In this regard, we note that "even

if there are marginal applications in which a statute would infringe on First Amendment

values, facial invalidation is inappropriate if the remainder of the statute covers a whole

range of easily identifiable and constitutionally proscribable conduct."  *Parker v. Levy*, 417

U.S. 733, 760, 94 S. Ct. 2547, 2563 (1974) (quotation omitted); *see also Smith-Caronia*,

---

[7] Hensel relies on our supreme court's holding in *State v. Machholz* that the felony-harassment statute was unconstitutionally overbroad.  574 N.W.2d 415, 421 (Minn. 1998).  The language of the statute at issue in *Machholz* was much broader in scope than Minn. Stat. § 609.72, subd. 1(2).  *See id.* at 418 (providing that a person commits a gross misdemeanor by "'engag[ing] in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty'" (quoting Minn. Stat. § 609.749, subd. 2(7) (1996))).  In *Machholz*, the court did not expressly consider whether the statute at issue was a reasonable time, place, or manner restriction.  Essentially, however, the court concluded that the statute was not narrowly tailored.  *See id.* at 420-21 (noting multiple instances of protected speech that would be proscribed under the statute).  In sum, *Machholz* is distinguishable.

714 A.2d at 767 (rejecting argument that statute must be given narrowing construction to apply only to "'actual, material' (or more than '*de minimus*') disruptions").

For similar reasons, we reject Hensel's assertion that Minn. Stat. § 609.72, subd. 1(2), must be narrowly construed to reach only fighting words. In this respect, Hensel relies on *S.L.J.*, in which the Minnesota Supreme Court addressed an overbreadth challenge to a provision of the disorderly conduct statute that criminalized "'engag[ing] in offensive, obscene, or abusive language.'" 263 N.W.2d at 415 (quoting Minn. Stat. § 609.72, subd. 1(3)). The court reasoned that the statutory language "clearly contemplates punishment for speech that is protected under the First and Fourteenth Amendments," but construed the statute narrowly to proscribe only fighting words in order to uphold its constitutionality. *Id.* at 419. In a subsequent case, *In re Welfare of T.L.S.*, this court held that the narrowing construction of *S.L.J.* does not apply to the conduct-based proscriptions in Minn. Stat. § 609.72, subd. 1(3). 713 N.W.2d 877, 880-81 (Minn. App. 2006). Likewise here, because Minn. Stat. § 609.72, subd. 1(2), is addressed to conduct (including speech) that disturbs lawful meetings, we conclude that the narrowing construction of *S.L.J.* is not required. *See O'Brien*, 391 U.S. at 376, 88 S. Ct. at 1678-79 (stating that, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms"); *Linares*, 655 A.2d at 751 (distinguishing cases applying fighting-words narrowing construction to breach-of-the-peace statutes because "they involved statutes that were not narrowly tailored to the nature of a particular site or the needs of specific government institutions").

Because we conclude that Minn. Stat. § 609.72, subd. 1(2), is neither void for vagueness nor unconstitutionally overbroad, we reject Hensel's challenge to the constitutionality of the statute.

**II.**

Hensel next challenges the district court's denial of her request for two jury instructions. A district court has "considerable latitude" in the selection of language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted). "The refusal to give a requested jury instruction lies within the discretion of the district court and no error results if no abuse of discretion is shown." *State v. Mitchell*, 577 N.W.2d 481, 493 (Minn. 1998) (quotation omitted). A district court does not abuse its discretion by using a pattern jury instruction when that instruction accurately states the law. *State v. Goodloe*, 718 N.W.2d 413, 422 (Minn. 2006).

In this case, the district court used the pattern instructions for a disorderly conduct charge. *See* 10 *Minnesota Practice*, CRIMJIG 13.120, 13.121 (2015). Those pattern instructions allow courts to select the subdivision or subdivisions of section 609.72 at issue. *Id.* Under the language for subdivision 1(3), the pattern instructions include additional, bracketed language instructing the jury, consistent with *S.L.J.*, that if the "defendant's conduct consisted only of offensive, obscene, or abusive language, you must also find that the words used were 'fighting words'" and defining that term. CRIMJIG 13.121. We conclude that the pattern instructions accurately state the law.

Hensel requested two additional instructions. The first defined expressive conduct and stated that, if Hensel's conduct consisted solely of "offensive, obscene, or abusive

16

language or expressive conduct, [the jury] must also find that the words or expressive conduct constituted 'fighting words.'" The second stated that, "[o]nly if the defendant's First Amendment protected expression, whether consisting of words or conduct, is separable from the conduct which disturbed the assembly or meeting can the defendant be found guilty of disorderly conduct under Minn. Stat. § 609.72, subd. 1(2)." The district court did not err by denying Hensel's request for these instructions because they do not accurately state the law. As we note above, the narrowing construction of *S.L.J.* does not apply to the conduct-based proscriptions in the disorderly conduct statute. *See T.L.S.*, 713 N.W.2d at 880-81. Moreover, the United States Supreme Court has made clear that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376, 88 S. Ct. at 1678-79. There is no requirement that conduct be separable from speech before it may constitutionally be proscribed. *See id.*; *see also T.L.S.*, 713 N.W.2d at 880-81 ("Although the disorderly conduct statute prohibits only 'fighting words' as applied to speech *content*, the disorderly shouting of otherwise protected speech or engaging in other 'boisterous or noisy *conduct*' may still trigger punishment without offending the First Amendment.").[8] Accordingly, we reject Hensel's assertion that the district court erred by denying her requested jury instructions.

---

[8] In support of her separability argument, Hensel cites to an unpublished case from this court and an Eighth Circuit decision. Neither is binding on this court. *See* Minn. Stat. § 480A.08, subd. 3(b) (2012) (providing that unpublished opinions of the Minnesota Court of Appeals are not precedential); *Citizens for a Balanced City v. Plymouth Congregational*

**III.**

Lastly, Hensel argues that the evidence was insufficient to support her conviction. In considering a claim of insufficient evidence, this court's review is limited to a careful analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

To find Hensel guilty of disorderly conduct for disturbing a meeting, the jury was required to find that (1) she disturbed a meeting that was not unlawful in its character and (2) she knew, or had reasonable grounds to know that her conduct would, or would tend to "alarm, anger, or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1(2).

"The intent element of a crime, because it involves a state of mind, is generally proved circumstantially." *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). When a conviction is based on circumstantial evidence, we use a two-step process to assess the sufficiency of the evidence to sustain the conviction.[9] *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances

---

*Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) (noting that we are bound only by Minnesota Supreme Court and United States Supreme Court decisions).

[9] Hensel does not refer to or rely on the circumstantial-evidence standard.

proved, that is, the evidence supporting the jury's guilty verdict. *Id*. at 598-99. Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt," giving no deference to the jury's choice among reasonable inferences. *Id*. at 599 (quotations omitted). "To successfully challenge a conviction based upon circumstantial evidence, a defendant must point to evidence in the record that is consistent with a rational theory other than guilt." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002).

The evidence presented in this case—that Hensel moved her chair forward and refused repeated requests to return it to the public-viewing area, all the while arguing with council members—although not overwhelming, is sufficient to support Hensel's conviction. The jury could have reasonably found that Hensel's conduct prevented the council from conducting its meeting and that she either knew or had reasonable grounds to know that her conduct would disturb the meeting. The evidence that Hensel points to in support of her sufficiency challenge is not consistent with a rational theory other than guilt. Accordingly, we do not disturb the jury's verdict.

## D E C I S I O N

Because Minn. Stat. § 609.72, subd. 1(2), is not unconstitutionally vague or overbroad, the district court did not err by denying Hensel's requested jury instructions, and the evidence supports Hensel's conviction, we affirm.

**Affirmed.**