STATE of Minnesota, Respondent,

v.

Robin Lyne HENSEL, Appellant.

A15-0005

Supreme Court of Minnesota.

Filed: September 13, 2017

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Paul D. Reuvers, Nathan C. Midolo, Iverson Reuvers Condon, Bloomington, Minnesota, for respondent.

Kevin C. Riach, David D. Coyle, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for appellant.

Teresa Nelson, American Civil Liberties Union of Minnesota, Saint Paul, Minnesota; and Scott M. Flaherty, Briggs and Morgan, P.A., Minneapolis, Minnesota, for amicus curiae American Civil Liberties Union of Minnesota.

Cort C. Holten, Jeffrey D. Bores, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota, for amicus curiae

Minnesota Police and Peace Officers Association Legal Defense Fund.

Susan L. Naughton, League of Minnesota Cities, Saint Paul, Minnesota, for amici curiae League of Minnesota Cities, Association of Minnesota Counties, and Minnesota Association of Townships.

## OPINION

STRAS, Justice.

This case requires us to determine whether the part of Minnesota's disorderly-conduct statute that prohibits "disturb[ing]" assemblies or meetings, Minn. Stat. § 609.72, subd. 1(2) (2016), is unconstitutional under the First Amendment to the United States Constitution. Both the district court and the court of appeals concluded that the statute is constitutional. Because Minn. Stat. § 609.72, subd. 1(2), violates the First Amendment and there is no reasonable narrowing construction of the statute, we reverse.

## FACTS

The facts of this case, which arose out of two Little Falls City Council meetings, are undisputed. At the first of the two meetings, appellant Robin Lyne Hensel sat in the public gallery, which was about 15 to 20 feet from a raised dais located at the front of the room and reserved for city-council members. Tables and chairs were positioned in the area between the gallery and the dais.

During the meeting, Hensel, who was sitting in the front row of the gallery, displayed signs that depicted dead and deformed children. These signs, which were approximately 4-feet long and 4-feet high, along with a sign on her head, obstructed the view of those seated behind her, causing the City Council president to grant permission to affected members of the gallery to come forward and sit in the

chairs available at the front of the room. Hensel's actions eventually led the City Council to adjourn and reschedule the meeting.

Four days later, the City Council reconvened in the same room, but this time there were no tables or chairs in the area between the gallery and the dais. Rather than sitting in the gallery, as she had at the previous meeting, Hensel took one of the folding chairs from the gallery and placed it in the space previously occupied by the tables and chairs. Hensel refused multiple requests to return to the gallery and challenged the City Council by demanding to see a policy that prohibited her from sitting there. Eventually, the Little Falls City Attorney warned Hensel that a police officer would remove her from the meeting room and issue her a ticket for disorderly conduct if she did not return to the gallery. When Hensel again refused a request to move, an officer escorted her from the room.

Based on these events, the State charged Hensel with disorderly conduct under Minn. Stat. § 609.72, subd. 1(2). Before trial, Hensel moved to dismiss the charge, arguing, among other grounds, that the statute violated the First Amendment because it was unconstitutionally overbroad, unconstitutionally vague, and unconstitutional as applied to her case. The district court, in denying Hensel's motion, rejected her vagueness challenge, reasoning that the statutory language was clear and understandable. Hensel's overbreadth challenge, by contrast, presented a closer call. Even though the court concluded that Minn. Stat. § 609.72, subd. 1(2), was overbroad, it upheld the statute by narrowly construing it to require proof that "the disturbance in this case was caused by defendant's conduct itself and not the content of the activity's expression." Because Hensel's conduct fell within

the contours of the revised statute, the court held that probable cause for the charges existed and that the as-applied challenge to the statute failed.

At trial, Hensel indirectly renewed her challenge to the constitutionality of the disturbance-of-an-assembly-or-meeting statute, Minn. Stat. § 609.72, subd. 1(2), by requesting a jury instruction requiring the jury to find that her conduct, if expressive, constituted "fighting words." Hensel also sought another jury instruction requiring the jury to find that her disturbing conduct was completely separate from any protected expression. The district court denied both requests and convicted her of disorderly conduct after the jury returned a guilty verdict.

The court of appeals affirmed Hensel's conviction, but disagreed with the district court's analysis of Hensel's overbreadth challenge. Specifically, the court of appeals held that the disturbance-of-an-assembly-or-meeting statute was a time, place, or manner restriction that was not subject to standard overbreadth analysis. *State v. Hensel*, 874 N.W.2d 245, 253 (Minn. App. 2016). Applying the relaxed test for time, place, or manner restrictions, the court concluded that the statute was constitutional and did not require a narrowing construction. *Id.* at 254-55. We granted Hensel's petition for review to evaluate the constitutionality of Minn. Stat. § 609.72, subd. 1(2).

**ANALYSIS**

■ The question presented in this case is whether the disturbance-of-an-assembly-or-meeting statute, Minn. Stat. § 609.72, subd. 1(2), violates the First Amendment to the United States Constitution. Each of Hensel's challenges—substantial overbreadth, void for vagueness, and instructional error—turns on the constitutionality of the statute. To evaluate Hensel's chal-

lenges, therefore, we apply a de novo standard of review. *See Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014).

**I.**

■ The most sweeping of the three challenges is Hensel's argument that the disturbance-of-a-meeting-or-assembly statute is unconstitutionally overbroad. An overbreadth challenge is a facial attack on a statute in which the challenger must establish that "a substantial number of [a statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). The rationale for allowing an overbreadth challenge, even when a statute is constitutional as applied in a particular circumstance, is that enforcement of an overbroad law chills protected speech, which "inhibit[s] the free exchange of ideas." *United States v. Williams*, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

Hensel's claim is that the disturbance-of-a-meeting-or-assembly statute is overly broad and chills a "substantial" amount of protected speech and expression. Hensel notes that the statute could apply in countless circumstances, including outside the government-meeting context, such as a private conversation around one's dinner table or a gathering of two or more people on the street. Hensel also emphasizes that the statute could reach activities like uttering unpopular "political or personal views," "[s]torming out of a meeting," "[r]aising one's voice" to express displeasure, or even "brandishing signs or other symbols that some find offensive." Given the myriad ways in which the State could enforce the statute against protected speech and ex-

pressive conduct, Hensel argues, the statute is substantially overbroad.

## A.

 To evaluate Hensel's overbreadth claim, the first step is to interpret the statute itself to determine whether it includes protected speech or expressive conduct within its coverage. *See Williams*, 553 U.S. at 293, 128 S.Ct. 1830. After all, "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* The disturbance-of-a-meeting-or-assembly statute, Minn. Stat. § 609.72, subd. 1(2), provides as follows:

> Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
>
> . . .
>
> (2) disturbs an assembly or meeting, not unlawful in its character. . . .

The statute is broad and unambiguous, prohibiting *any* conduct or speech that "disturbs an assembly or meeting," whether expressive or not. *Id.* An individual could violate the statute by, for example, wearing an offensive t-shirt, using harsh words in addressing another person, or even raising one's voice in a speech. To be sure, the statute *also* conceivably covers fighting words, obscene speech, and true threats—all categories of unprotected speech. *See Stevens*, 559 U.S. at 468, 470, 130 S.Ct. 1577 (discussing "historically unprotected categories of speech," including obscenity); *Virginia v. Black*, 538 U.S. 343, 359-60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (explaining that states may ban fighting words and true threats). But it also regulates protected expression. In fact, the plain language of the disturbance-of-a-meeting-or-assembly statute, by using the phrase "will tend to," arguably targets expressive activity of a controversial nature, given that it defines the mens-rea element of the offense by reference to the predicted effect of the speech or conduct on others, not its purpose.

The State seizes on the fact that the statute criminalizes "disorderly conduct" to argue that the disturbance-of-a-meeting-or-assembly statute does not regulate any protected expression at all. The State's argument is no more persuasive here than it was in *State v. Machholz*, a case in which we considered an overbreadth challenge to the felony-harassment statute. 574 N.W.2d 415, 419 (Minn. 1998). Like the disturbance-of-a-meeting-or-assembly statute, the felony-harassment statute also regulated conduct. In *Machholz*, the statute criminalized conduct "that interfere[d] with another person or intrude[d] on the person's privacy or liberty." *Id.* (quoting Minn. Stat. § 609.749, subd. 2(7) (1996)) (internal quotation marks omitted). We held there, in language that is equally applicable here, that "[t]here is no question that the harassing conduct proscribed by [the statute] does encompass expressive activity. The broad reach of the statutory language is not limited to nonexpressive conduct." *Id.* at 420. Here, in addition to regulating expressive conduct, the disturbance-of-a-meeting-or-assembly statute covers protected speech as well. Based on *Machholz*, therefore, we reject the State's characterization of the statute as regulating only unprotected, nonexpressive conduct.

## B.

 Having concluded that the disturbance-of-a-meeting-or-assembly statute regulates speech and conduct protected by the First Amendment, we move on to the second step of the analysis, which is to determine whether the statute is substan-

tially overbroad. A statute is not substantially overbroad merely because "one can conceive of some impermissible. applications." *Williams*, 553 U.S. at 303, 128 S.Ct. 1830. Rather, "[a] statute is substantially overbroad ... if, in addition to prohibiting unprotected speech, it also prohibits a substantial amount of constitutionally protected speech." *State v. Washington-Davis*, 881 N.W.2d 531, 539 (Minn. 2016); *see Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

 Once again, the statute's plain language is our guide to determining the amount of protected speech and expressive conduct regulated by the statute. The statute sets forth its mens-rea element in the introductory clause, which requires the offender to "know[ ], or hav[e] reasonable grounds to know that [the activity] will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1 (2016). Under the statute, therefore, even negligent activity will subject an individual to criminal liability. The actus-reus element is even broader. Although an individual can commit disorderly conduct in a number of ways, the disturbance-of-a-meeting-or-assembly statute prohibits any act that "disturbs an assembly or meeting, not unlawful in its character." *Id.*, subd. 1(2).

The use of the word "disturb" in the statute to describe the actus-reus element does not place any meaningful limitation on the statute's scope. To "disturb" is "[t]o break up or destroy the tranquility, order, or settled state of," "[t]o interfere with; interrupt," and "[t]o intrude on; inconvenience." *The American Heritage Dictionary of the English Language* 525 (5th ed. 2011); *see Webster's Third New International Dictionary* 661 (2002) (defining "disturb" as "to destroy the rest, tranquility, or settled state of," "to throw into confu-

sion or disorder," and "to interfere with"). The statute's attendant-circumstance element, which requires the disturbance to occur at a "meeting" or "assembly," also does not limit the breadth of the statute in any significant way. The word "meeting" includes "[any] assembly or gathering of people, as for a business, social, or religious purpose." *The American Heritage Dictionary of the English Language* at 1094; *see Webster's Third New International Dictionary* at 1404. Similarly, "assembly" means "[a] group of persons gathered together for a common reason." *The American Heritage Dictionary of the English Language* at 107; *see Webster's Third New International Dictionary* at 131.

Combining its component parts, the statute prohibits *any* activity, whether expressive or not, that "interferes with" or destroys the "tranquility" of any lawful "gathering of people" who share a common purpose or reason for gathering, so long as the individual knows, or has reason to know, that the activity will, or will tend to, disturb others. Minn. Stat. § 609.72, subd. 1(2). This statute presents us with a "criminal prohibition of alarming breadth." *Stevens*, 559 U.S. at 474, 130 S.Ct. 1577. It criminalizes a public speech that "criticize[s] various political and racial groups ... as inimical to the nation's welfare." *Terminiello v. City of Chicago*, 337 U.S. 1, 3, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). It prohibits an individual from wearing a jacket containing an offensive inscription to a meeting. *See Cohen v. California*, 403 U.S. 15, 16, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). And certainly, it would forbid someone from burning the American flag on a public street. *See Texas v. Johnson*, 491 U.S. 397, 399, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In addition to being disruptive of gatherings of all kinds, all of these actions share a common quality: they are protected under the First Amendment.

Due to the countless ways in which Minn. Stat. § 609.72, subd. 1(2), can prohibit and chill protected expression, we conclude that the statute facially violates the First Amendment's overbreadth doctrine.

We reached a similar conclusion in *Machholz*. The statute in *Machholz* prohibited "harassing conduct that interfere[d] with another person or intrude[d] on the person's privacy or liberty." 574 N.W.2d at 418 (quoting Minn. Stat. § 609.749, subd. 2(7) (1996)) (internal quotation marks omitted). Applying the plain language of the statute, we emphasized that it swept "in a whole spectrum of constitutionally protected activity," including burning a cross at a political rally and conducting a Nazi march in a town filled with Holocaust survivors. *Id.* at 420 (citing *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), and *Nat'l Socialist Party of Am. v. Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977)). We held that the felony-harassment statute, as it was then drafted, violated the First Amendment's overbreadth doctrine. *Id.* at 421. Our decision in *Machholz*, as well as our conclusion here, is consistent with the weight of authority from around the country. *See, e.g., In re Kay*, 1 Cal.3d 930, 83 Cal.Rptr. 686, 464 P.2d 142, 146, 149 (1970) (concluding that a statute prohibiting "willfully disturb[ing] or break[ing] up any assembly or meeting, not unlawful in its character," as "literally applied," violated the First Amendment (citation omitted) (internal quotation marks omitted)); *State v. Fielden*, 280 Ga. 444, 629 S.E.2d 252, 254, 256 (2006) (invalidating a statute on First Amendment grounds that prohibited "recklessly or knowingly commit[ting] any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession" (citation omitted) (internal quotation marks omitted)); *State v. Schwing*, 42 Ohio St.2d 295, 328 N.E.2d 379, 383, 385 (1975) (holding that a provision stating that "no person shall willfully interrupt or disturb a lawful assemblage of persons" was unconstitutionally overbroad absent a narrowing construction (citation omitted) (internal quotation marks omitted)).

C.

Despite the lack of support for the constitutionality of the disturbance-of-a-meeting-or-assembly statute, the State argues that the statute is not substantially overbroad for three reasons. First, the State says that the statute's regulation of protected expression is only incidental, not substantial, because it "does not ban all conduct at meetings," but rather only limits conduct done with knowledge that it will disrupt "a meeting or assembly by alarming, angering or disturbing others." Second, relying on the court of appeals' opinion, the State interprets the statute as "penaliz[ing] only conduct that is *intended* to cause a disturbance," which limits the statute's reach and eliminates any overbreadth concerns. *Hensel*, 874 N.W.2d at 254. Third, the State argues that even if the statute regulates protected expression, the statute is a time, place, or manner restriction that is subject to a more deferential standard of review. None of the State's arguments saves the statute.

■ First, the fact that the disturbance-of-a-meeting-or-assembly statute does not ban *all* speech and conduct does not mean that the conduct it *does* ban is sufficiently narrow. The State's argument would require us to accept the notion that a statute is constitutional just because it could ban more speech. The constitutionality of a statute under the overbreadth doctrine does not depend on how much protected expression it does *not* (but could) ban, but rather on whether it bans too much protected expression in relation

to its legitimate sweep. *Stevens*, 559 U.S. at 473, 130 S.Ct. 1577. This statute, which the State characterizes as "limited," still bans a broad range of protected speech and conduct.

▮ The State's second argument, which adds an intent requirement to the statute, is inconsistent with the plain language of the statute. Rather than prohibiting only intentional conduct, as the State contends, the statute's mens-rea element prohibits actions done with knowledge or "reasonable grounds to know" that the act will "tend to" disturb others. Minn. Stat. § 609.72, subd. 1. This means that an individual need only perform an act that is negligent, which allows the statute to reach all types of acts, intentional or not, that have a tendency to disturb others. The statute's inclusion of a negligence standard makes it more likely that the statute will have a chilling effect on expression protected by the First Amendment, the key concern of the overbreadth doctrine. *See Virginia v. Hicks*, 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (noting that the overbreadth doctrine arises "out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions"); *State v. Mauer*, 741 N.W.2d 107, 110-11 (Minn. 2007) (discussing the "chilling effect" associated with criminal statutes that require only negligence).

Third, we also reject the State's argument that the disturbance-of-a-meeting-or-assembly statute is not substantially overbroad because it is a valid time, place, or manner restriction. As an initial matter, it is not clear that the time, place, or manner test applies to the statute because it criminalizes all conduct that "disturbs an assembly or meeting" in *any* "public or private place," regardless of when or where it

occurs. The statute also does not appear to regulate the manner of the expression because it focuses on the act's predicted effect on third parties, not the manner in which the act occurs. Therefore, the statute does not prohibit expression from occurring only at a certain time, in a particular place, or in a specific manner—the hallmarks of a time, place, or manner restriction. *See Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.").

▮ But even if the more deferential time, place, or manner test were applicable, the disturbance-of-a-meeting-or-assembly statute would still not survive constitutional scrutiny. Time, place, or manner restrictions are valid "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). The disturbance-of-a-meeting-or-assembly statute is content neutral, and Hensel does not challenge the court of appeals' conclusion that alternative channels of communication are available.

▮ Still, the statute suffers from a lack of narrow tailoring. A narrowly tailored statute "need not be the least restrictive" option available, *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), but it must "not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492

U.S. 469, 478, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (quoting *Ward*, 491 U.S. at 799, 109 S.Ct. 2746). The State identifies its interest as "the orderly facilitation of both public and private gatherings." *See also Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 535, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) (noting that "securing public order" is a "significant governmental interest").

Even if we assume that the State has a significant government interest in preventing disruptions and maintaining order at *all* public and private gatherings of two or more people—itself a doubtful proposition—the disturbance-of-a-meeting-or-assembly statute is not narrowly tailored to this interest for all the reasons we have already discussed. The statute regulates a broad swath of protected speech and expressive conduct, far more than is necessary to maintain order at meetings and assemblies. And the statute's negligence standard covers a wide array of behavior, including actions taken without the intent to disrupt a meeting or assembly.

In urging us to uphold the disturbance-of-a-meeting-or-assembly statute, the State relies primarily on *Grayned*, 408 U.S. 104, 92 S.Ct. 2294, which involved an ordinance that prohibited the willful "making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class." *Id.* at 107-08, 92 S.Ct. 2294 (citation omitted) (internal quotation marks omitted). The anti-noise ordinance in *Grayned* was far narrower than the statute at issue here because it was limited to certain times—while class was in session—and to particular places—the space "adjacent to any building in which a school or any class thereof is in session." *Id.* (citation omitted)

(internal quotation marks omitted). These attributes led the Supreme Court to conclude that the anti-noise ordinance in *Grayned* was not "impermissibly broad." *Id.* at 119, 92 S.Ct. 2294. In this case, by contrast, the disturbance-of-a-meeting-or-assembly statute is "impermissibly broad" because it potentially restricts protected conduct and speech occurring anywhere and at any time regardless of intent, the textbook description of a statute suffering from substantial overbreadth.[1]

## II.

■■■■ Having concluded that the statute suffers from substantial overbreadth, the remaining question is how to remedy the constitutional violation. There are two possibilities here. First, if the statute is "readily susceptible" to a narrowing construction, we could adopt such a construction if it remedies the statute's constitutional defects. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). If no reasonable narrowing construction remedies the statute's overbreadth problem, then the remaining option is to invalidate the statute. *See State v. Crawley*, 819 N.W.2d 94, 105 (Minn. 2012) (stating that when "the words of the [law] simply leave no room for a narrowing construction ... this court will completely invalidate it" (citation omitted) (internal quotation marks omitted)).

At various junctures in this case, both Hensel and the State have presented competing narrowing constructions of the disturbance-of-a-meeting-or-assembly statute. Hensel, for her part, pursued a narrowing construction during the jury-instruction phase that would have limited the application of the statute to fighting words. The

---

1. We express no opinion about whether other provisions of the disorderly-conduct statute present similar constitutional problems.

State, on the other hand, has largely adopted the narrowing construction applied by the district court, which would require "proof that the disturbance.... was caused by defendant's conduct itself and not the content of the activity's expression." And the dissent proposes yet another possibility: revising the statute to prohibit only certain types of conduct, not speech, and purging the statute of its negligence standard. For the reasons that follow, the statute is not "readily susceptible" to any of these three narrowing constructions because they all would require us to rewrite the statute, not simply reinterpret it. *See Stevens*, 559 U.S. at 464-65, 480-81, 130 S.Ct. 1577 (rejecting a narrowing construction of a federal statute, concluding that "[t]o read [the statute] as the Government desires requires rewriting, not just reinterpretation").

### A.

 The first of the alternatives is the fighting-words construction. According to Hensel, narrowly construing the statute to cover only fighting words would be consistent with the First Amendment because the statute would then exclusively reach unprotected speech. As the Supreme Court has explained, the First Amendment allows the government to proscribe " 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Even though Hensel is correct that a criminal statute prohibiting *only* fighting words would be consistent with the First Amendment, the disturbance-of-a-meeting-or-assembly statute is not "readily susceptible" to such a construction. Nowhere does the statute mention "fighting words" or the "incite[ment] of an *immediate* breach of the peace." Rather, the statute prohibits *any* actions that disturb a meeting or assembly, whether fighting words or not. Like the felony-harassment statute we invalidated in *Machholz*, the disturbance-of-a-meeting-or-assembly statute covers a wide "spectrum of constitutionally protected activity beyond the category of fighting words," making it unreasonable to read the statute "as narrowly as [Hensel] contends." 574 N.W.2d at 420-21.[2] To adopt a fighting-words construction in this case would require us to "perform[ ] ... plastic surgery upon the face of the [statute]," rather than just adopting an alternative, reasonable construction of the statute's ac-

---

**2.** This case is also distinguishable from *Crawley*, 819 N.W.2d at 97-98, in which we rejected a facial challenge to a statute that criminalized knowingly false reports of police misconduct. There, we adopted a narrowing construction that limited the proscribed conduct under the statute to defamatory speech, which is an unprotected category of speech under the First Amendment. *Id.* at 107, 109-15. The statute in *Crawley* was readily susceptible to a narrowing construction because, although the statute "as written, contemplate[d] the punishment of protected speech in *some* of its applications, there [was] a core of easily identifiable and constitutionally proscribable conduct—defamation—that the statute prohibit[ed]." *Id.* at 107 n.12 (internal quotation marks omitted). This "core of easily identifiable and constitutionally proscribable conduct" came from the language of the statute itself, which as written satisfied most of the elements of defamation. *See id.* at 108. Here, by contrast, because the disturbance-of-a-meeting-or-assembly statute does not provide *any* indication that it is limited to fighting words, there is no core of easily identifiable and constitutionally proscribable expression that it prohibits. *See City of Houston v. Hill*, 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (refusing to apply a narrowing construction because the ordinance at issue "simply ha[d] no core of constitutionally unprotected expression to which it might be limited" (citation omitted) (internal quotation marks omitted)).

tual words. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). This we will not do. *Stevens*, 559 U.S. at 480, 130 S.Ct. 1577 (explaining that rewriting a statute to "conform it to constitutional requirements" would constitute a "serious invasion of the legislative domain" (citations omitted) (internal quotation marks omitted)).

In arguing to the contrary, Hensel relies primarily on *In re Welfare of S.L.J.*, 263 N.W.2d 412 (Minn. 1978), which considered another provision of Minn. Stat. § 609.72, subd. 1. The provision in *S.L.J.* prohibited "engag[ing] in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger, or resentment in others." *Id.* at 415 (quoting Minn. Stat. § 609.72, subd. 1(3) (1978)) (internal quotation marks omitted). After concluding that the provision as written was facially unconstitutional under the First Amendment, we nevertheless upheld its constitutionality "by construing it narrowly to refer only to 'fighting words.'" *Id.* at 419 (footnotes omitted).

The remedy we applied in *S.L.J.* is untenable here for two reasons. First, in contrast to the statute from *S.L.J.*, which addressed speech and conduct separately using different standards, the disturbance-of-a-meeting-or-assembly statute regulates speech and conduct together under the same standard. *S.L.J.* involved only the "language" portion of the statute, not the statute's prohibition of certain "conduct," so we were able to adopt a fighting-words construction of the statute's restrictions on speech without having to consider whether the portion of the statute applicable to "boisterous and noisy conduct" was also amenable to a narrowing construction. In this case, however, a single standard, the "disturb[ance] [of] a meeting or assembly," governs both categories, making it impossible to consider the prohibitions on speech and conduct separately.

Second, and perhaps more importantly, the statute at issue in *S.L.J.* was readily susceptible to a narrowing construction. Rather than broadly prohibiting any actions that disturb meetings or assemblies, like the statute in this case, the statute in *S.L.J.* more narrowly prohibited "offensive, obscene, or abusive language." *Id.* at 415 (quoting Minn. Stat. § 609.72, subd. 1(3)) (internal quotation marks omitted). Fighting words, by their very nature, are offensive, obscene, or abusive, so it was straightforward in *S.L.J.* to identify a "core of easily identifiable and constitutionally proscribable conduct." *Crawley*, 819 N.W.2d at 107 n.12. Here, by contrast, fighting words are hardly a "core of easily identifiable" conduct within a statute that broadly prohibits anything that "disturbs an assembly or meeting." Hensel's narrowing construction of the disturbance-of-a-meeting-or-assembly statute, in other words, is unreasonable.

### B.

The second proposed narrowing construction is the conduct-content construction, which would require "proof that the disturbance in this case was caused by defendant's conduct itself and not the content of the activity's expression." This construction, originally adopted by the district court, is now the State's proposed construction as well.

In adopting the conduct-content construction, the district court drew on the analysis of the California Supreme Court in *In re Kay*, 1 Cal.3d 930, 83 Cal.Rptr. 686, 464 P.2d 142. *Kay* involved a statute prohibiting an individual from "willfully disturb[ing] or break[ing] up any assembly or meeting, not unlawful in its character." *Id.*, 83 Cal.Rptr. 686, 464 P.2d at 146 (quoting Cal. Penal Code § 403 (West

1970)) (internal quotation marks omitted). After concluding that the statute, as "literally applied," was unconstitutionally overbroad, the court adopted a narrowing construction to preserve its constitutionality. *Id.*, 83 Cal.Rptr. 686, 464 P.2d at 149-50. The narrowing construction differentiated between conduct and content, imposing criminal liability "only when the defendant's activity itself—and *not* the content of the activity's expression—substantially impair[ed] the effective conduct of a meeting." *Id.*, 83 Cal.Rptr. 686, 464 P.2d at 147, 150.

■ Like the fighting-words construction, the conduct-content construction, at least in the context of the disturbance-of-a-meeting-or-assembly statute, is flawed. First, the statute itself is not readily susceptible to this construction. Even if the narrowing construction cures the statute's overbreadth problem, it would require us to rewrite the statute, not reinterpret it. *See Stevens*, 559 U.S. at 481, 130 S.Ct. 1577. The actus-reus element, as it now reads in the statute, simply prohibits anything that "disturbs an assembly or meeting," but makes no distinction between conduct and content. To add a narrowing construction along the lines proposed by the district court and the State, we would have to add the words "so long as the disturbance is solely caused by the conduct and not the content of the expression." There is nothing in the statute's text to suggest such a distinction, and besides, we have long held that it is impermissible to "add words or phrases to an unambiguous statute." *Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013); *see also Watson v. St. Paul City Ry. Co.*, 70 Minn. 514, 73 N.W. 400, 401 (1897).

Second, the conduct-content narrowing construction does not resolve the chilling concerns created by the negligence standard in the disturbance-of-a-meeting-or-assembly statute. Even if the statute's coverage is limited to conduct, the negligence standard, which criminalizes even unintentional acts, may deter individuals from engaging in expressive conduct protected by the First Amendment. *See Crawley*, 819 N.W.2d at 108 n.15 ("[B]ecause [the statute] requires a heightened *mens rea*—knowingly—it does not risk 'chilling' valuable speech.").

Third, the conduct-content narrowing construction is both unworkable and incomplete. It is unworkable because it would require the factfinder to determine whether the cause of the disruption was the conduct itself or the expressive message carried by the conduct, an impossible task in some situations. It is incomplete because even if the cause of the disruption must be the conduct and not its underlying message, the conduct-content narrowing construction could still ban a considerable amount of protected expressive conduct. The latter point, in particular, could require us to entertain serial as-applied challenges to the rewritten statute as new factual situations arise.

A straightforward example illustrates the point. In this case, Hensel displayed signs with pictures of dead and deformed children during the first of the two Little Falls City Council meetings. Suppose that the State had prosecuted Hensel solely because of her decision to display the controversial signs at the first meeting, not her later decision to sit in the area between the gallery and the dais during the second meeting. Under such a scenario, the factfinder would need to disentangle whether the cause of the disruption was her decision to display the signs, which blocked the view of other members of the public, or the message on the signs, which contained graphic images. Yet in many cases, the answer is likely both, leaving the jury with the thorny task of attempting to

differentiate between the two in a disorderly-conduct case.

The example also shows why the State's solution is incomplete. Even if the jury determines that the disruption was due to the conduct itself without regard to its underlying message, the disturbance-of-a-meeting-or-assembly statute would still regulate expressive conduct, opening the statute to serial as-applied challenges as new circumstances arise. No one in this case seriously disputes that Hensel's signs were a form of expressive conduct, if not speech itself, and so even under a narrowed statute, the First Amendment may still protect them. Unlike Hensel's fighting-words construction, therefore, it is not clear that the conduct-content construction sufficiently narrows the statute to allow it to survive additional constitutional scrutiny. *See City of Houston v. Hill*, 482 U.S. 451, 469, 469 n.18, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (citing *Shuttlesworth*, 394 U.S. at 153, 89 S.Ct. 935) (rejecting a proposed narrowing construction because it was an implausible reading of the ordinance and, even if it were adopted, it would not sufficiently narrow the ordinance's scope).

### C.

The dissent proposes a third narrowing construction, best described as a broader version of the district court's conduct-content construction. This narrowing construction, the conduct construction, would limit the scope of the disturbance-of-a-meeting-or-assembly statute in two ways. First, it would eliminate the statute's overbroad regulation of speech by construing the word "does" to regulate only "conduct, not speech." Second, it would excise the phrase, "or having reasonable grounds to know," in an effort to eliminate the chilling concerns created by the statute's negligence standard. Besides showing the inherent arbitrariness of attempting to narrow a statute of "alarming breadth," *Stevens*, 559 U.S. at 474, 130 S.Ct. 1577, the three separate narrowing constructions produced by this case, including the dissent's conduct construction, bear little resemblance to the actual language of the statute that the Legislature adopted.

To be sure, the conduct construction eliminates the chilling concerns arising out of the statute's sweeping negligence standard and avoids the workability problem by relieving the factfinder of the complex task of distinguishing between the conduct itself and its expressive message, both of which were problems with the conduct-content construction. But the other problems remain. Even aside from its strained and unnatural interpretation of the disturbance-of-a-meeting-or-assembly statute, the conduct construction, by expanding the reach of the conduct-content construction, only incrementally alleviates the overbreadth problem.

The most serious problem with the conduct construction is that it is inconsistent with the statute's text. Nothing in the statute's plain language, which prohibits anything done to "disturb[ ] an assembly or meeting," suggests that the statute targets only conduct. In arguing to the contrary, the dissent points to the word "does," which it says "refers to action or conduct" rather than speech. The word "does," however, can just as easily refer to speech as it does conduct. The disorderly-conduct statute itself shows why.

Among the actions prohibited by the disorderly-conduct statute, as the dissent recognizes, is "offensive, obscene, or abusive *language* tending reasonably to arouse alarm, anger, or resentment in others," which like the disturbance-of-a-meeting-or-assembly statute, is preceded by the word "does." Minn. Stat. § 609.72, subd.

1(3) (emphasis added).[3] Under the dissent's narrowing construction, the revised statute becomes internally contradictory. On the one hand, the word "does," according to the dissent, refers only to conduct, *not* speech. Yet the statute also prohibits "offensive, obscene, or abusive *language*," which clearly and unambiguously refers to speech. Both cannot be true. If we were to adopt the dissent's construction of the word "does," the disorderly-conduct statute as a whole becomes a jumble by requiring us to give the word "does" one meaning in the disturbance-of-a-meeting-or-assembly statute—one subdivision of the disorderly-conduct statute—but an entirely different meaning in the other subdivisions of the disorderly-conduct statute. The bottom line, of course, is that the disturbance-of-a-meeting-or-assembly statute is not "readily susceptible" to the dissent's narrowing construction, which is inconsistent with the disorderly-conduct statute as a whole.

The dissent's narrowing construction, however, does not stop there. In addition to conferring an unnatural and internally contradictory meaning on the word "does," the dissent strips the statute of its negligence standard. Even assuming the dissent is correct that deleting, rather than adding to, a statute's text is more appropriate when trying to determine whether a statute is readily susceptible to a narrowing construction, the dissent does *both*. The dissent's revised statute would read as follows:

3. The provision immediately following the disturbance-of-a-meeting-or-assembly statute provides in full as follows:

> Whoever *does* any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:

Subdivision 1. Crime. Whoever does any of the following in a public or private place, including on a school bus, knowing, ~~or having reasonable grounds to know~~ that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:

. . .

(2) disturbs an assembly or meeting, not unlawful in its character, so long as such disturbance is caused by conduct and not speech.

If we were to adopt the dissent's narrowing construction, then it is difficult to imagine any statute that would *not* be amenable to a narrowing construction, and therefore to conceive of *any* statute that could be invalidated on overbreadth grounds, regardless of its reach. After all, the shave-a-little-off-here and throw-in-a-few-words-there statute on which the dissent eventually settles may well be a more sensible statute, but at the end of the day, it bears little resemblance to the statute that the Legislature actually passed.

The dissent's narrowing construction, even more so than the conduct-content construction, is also incomplete because it would still ban a considerable amount of expressive conduct. The dissent essentially concedes as much, resting the adequacy of its construction on the unsupported notion—indeed, its hope—that the revised

. . .

(3) engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive *language* tending reasonably to arouse alarm, anger, or resentment in others.

Minn. Stat. § 609.72, subd. 1(3) (emphasis added).

statute would not regulate much expressive conduct, or if it does, it will be of the type that the State can regulate under *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). There is reason to doubt both propositions. The dissent's conduct construction would still ban quintessentially protected expressive conduct, including, for example, wearing a black armband to protest war, *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); burning a cross, *see Black*, 538 U.S. at 359-60, 362, 123 S.Ct. 1536; or lighting an American flag on fire on a public street, *see Johnson*, 491 U.S. at 399, 109 S.Ct. 2533. Each of these actions would be criminal so long as an individual knows that it will tend to disturb others and there is an "assembly or meeting" of two or more people happening somewhere nearby. Given these and countless other examples of unconstitutional applications of the statute, the conduct construction is, at best, a partial cure for a serious overbreadth problem.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court with an instruction to vacate Hensel's disorderly-conduct conviction.[4]

Reversed and remanded.

LILLEHAUG, J., took no part in the consideration or decision of this case.

Dissenting, Anderson, J., Gildea, C.J.

## DISSENT

ANDERSON, Justice (dissenting).

I agree with the court that the disorderly conduct statute, Minn. Stat. § 609.72,

subd. 1(2) (2016), is overbroad as written. But the court too hastily invalidates the statute after concluding that it reaches some constitutionally protected speech. Because the statute can be narrowly construed, I respectfully dissent.

### I.

Invalidating a statute is "strong medicine that this court does not hastily prescribe." *State v. Crawley*, 819 N.W.2d 94, 105 (Minn. 2012) (citation omitted) (internal quotation marks omitted). We will invalidate a statute for facial overbreadth only "as a last resort" when the overbreadth is "substantial." *State v. Machholz*, 574 N.W.2d 415, 419 (Minn. 1998). Instead, we narrowly construe statutes to avoid facial invalidity whenever possible. *Crawley*, 819 N.W.2d at 105. In other words, facial invalidation is used only when "the words of the law simply leave no room for a narrowing construction ... [and] in all its applications the law creates an unnecessary risk of chilling free speech." *Id.* (citation omitted) (internal quotation marks omitted); *see New York v. Ferber*, 458 U.S. 747, 769 n.24, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

Accordingly, we have repeatedly adopted narrowing constructions of similar ordinances and statutes. For example, in *City of St. Paul v. Mulnix*, the defendants were charged with violating a city ordinance that prohibited disorderly conduct, which it defined by stating: "No person shall make ... any ... disturbance ... to the annoyance or disturbance of the citizens, or other persons in said city." 304 Minn. 456, 232 N.W.2d 206, 207 (1975). We

---

4. Because the disturbance-of-a-meeting-or-assembly statute is unconstitutionally overbroad and no reasonable narrowing construction is available, it is not necessary to reach Hensel's claims that the statute is unconstitutionally vague and that she was entitled to a fighting-words jury instruction at trial.

adopted a narrowing construction and concluded that "the ordinance is applicable only to criminal conduct or activities such as 'fighting words.'" *Id.* We refused to invalidate the statute on its face, even though we noted that the ordinance was "out of date and badly in need of revision." *Id.* at 207-08.

Similarly, in *State v. Hipp*, we addressed the unlawful-assembly statute, which prohibited assembling "[w]ithout unlawful purpose, but the participants so conduct themselves in a disorderly manner as to disturb or threaten the public peace." 298 Minn. 81, 213 N.W.2d 610, 612 (1973). We narrowly construed the statute to apply only to "three or more assembled persons ... conducting themselves in such a disorderly manner as to threaten or disturb the public peace by unreasonably denying or interfering with the rights of others to peacefully use their property or public facilities without obstruction, interference, or disturbance." *Id.* at 614. We did not strike down the statute in its entirety, even though our narrow construction arguably required us to add language to the statute.

Finally, in *Crawley*, we addressed a statute that stated: "Whoever informs, or causes information to be communicated to, a peace officer, whose responsibilities include investigating or reporting police misconduct, that a peace officer ... has committed an act of police misconduct, knowing that the information is false, is guilty of a crime." 819 N.W.2d at 98 (quoting Minn. Stat. § 609.505, subd. 2 (2010)). We narrowly construed this statute to apply only to defamation, even though the statute as written omitted two of the four elements of defamation. *Id.* at 104-05. Taken together, these cases show that we

do not hesitate to adopt a narrowing construction when it is possible to do so.

Here, Hensel was charged with violating Minn. Stat. § 609.72, subd. 1(2) (2016), which states:

> Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
>
> . . .
>
> (2) disturbs an assembly or meeting, not unlawful in its character. . . .

I agree with the court that, as written, the statute is overbroad because the word "disturbs" covers a wide variety of conduct and speech, including constitutionally protected speech. But the breadth of the word "disturbs" does not prevent us from adopting a narrowing construction. *See Mulnix*, 232 N.W.2d at 207-08 (adopting a narrowing construction of an ordinance that used the word "disturbance"); *Hipp*, 213 N.W.2d at 614-15 (adopting a narrowing construction of a statute that used the word "disturb").

And here, reading the disorderly conduct statute as a whole reveals a repeated emphasis on conduct, not the content of speech. First, the statute describes the crime as "disorderly conduct."[1] Minn. Stat. § 609.72, subd. 1 (2016) ("Whoever does any of the following ... is guilty of disorderly *conduct*. . . ." (emphasis added)). In addition, the statute states that an individual is guilty of disorderly conduct when he "does any of the following." *Id.* The word "does" refers to action or con-

---

1. The court notes that in *State v. Machholz*, 574 N.W.2d 415, 419 (Minn. 1998), we rejected the argument that the statute's use of the word "conduct," standing alone, limited its reach to unprotected, nonexpressive conduct. But here, unlike in *Machholz*, that is only the beginning, not the end, of the argument.

duct. *See The American Heritage Dictionary of the English Language* 529 (5th ed. 2011) (defining "do" as "[t]o perform or execute; carry out"). It does not ordinarily refer to speech.

Additionally, the other two clauses of the disorderly conduct statute also suggest that clause 2 is focused on conduct. Clause 1 prohibits "engag[ing] in brawling or fighting," which refers to conduct, not merely spoken disagreements. Minn. Stat. § 609.72, subd. 1(1). Conversely, clause 3 specifically prohibits both conduct and language. *Id.*, subd. 1(3) ("engages in offensive, obscene, abusive, boisterous, or noisy *conduct* or in offensive, obscene, or abusive *language* tending reasonably to arouse alarm, anger, or resentment in others" (emphasis added)). This structure suggests that if the Legislature had intended to prohibit both conduct and language in clause 2, it would have followed the format of clause 3 and said so explicitly. Therefore, section 609.72, subdivision 1(2), can be narrowly construed to apply only when an individual disturbs a meeting through conduct, not speech.

I also agree with the court that the mens-rea element in section 609.72, subdivision 1—"knowing, or having reasonable grounds to know"—is problematic because a negligence standard could chill a substantial amount of constitutionally protected speech. But previously we have been more willing to narrowly construe statutes when doing so requires only deleting, rather than adding, language from the statute. *See Thompson v. Estate of Petroff*, 319 N.W.2d 400, 407 (Minn. 1982) ("[W]e cannot add language to [a statute] in order to render it constitutionally permissible.

However, we can strike [language from the statute]."). Here, deleting "or having reasonable grounds to know" from the statute limits the reach of the statute to those circumstances when the defendant knows that his conduct will disturb an assembly or meeting. Deleting, rather than adding, language from the statute is the type of narrowed construction that we have consistently preferred over striking an entire statute as facially unconstitutional.

Therefore, I conclude that the statute, viewed as a whole, is readily susceptible to a narrowing construction in which it applies when an individual, through conduct, not speech, disturbs an assembly or meeting, not unlawful in its character, knowing that the conduct of the individual will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace.

## II.

When the statute is narrowly construed to prohibit only conduct, not speech, that the defendant knows will disturb a meeting or assembly, it is not so overbroad as to require facial invalidation. A statute's overbreadth must be "real" and "substantial" to be facially invalid. *Ferber*, 458 U.S. at 770, 102 S.Ct. 3348 (citation omitted) (internal quotation marks omitted). It should not be held invalid merely because one can conceive of some impermissible applications. *Id.* at 772, 102 S.Ct. 3348.

Construing the statute to apply only to conduct significantly reduces the impermissible applications of the statute because some conduct is not protected by the First Amendment.[2] *See Virginia v. Hicks*, 539

---

**2.** I do not share the court's concern that narrowly construing the statute will result in a large number of future as-applied constitutional challenges to the statute. Minnesota Statutes § 609.72, subd. 1(2), has existed in substantially the same form since 1963, Minn. Stat. 609.72, subd. 1(2) (1965), and a similar statute dates back to at least 1905, Minn. Rev. Laws § 5013 (1905). In over a century of jurisprudence, this is the first time we have

U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (describing the "substantial social costs" of applying the overbreadth doctrine to invalidate a statute that criminalizes unprotected conduct). Even when conduct is deemed "expressive" and protected by the First Amendment, the State may criminalize it if the statute furthers an important government interest that is unrelated to the suppression of free expression, and the incidental restriction on alleged First Amendment freedoms is no greater than is essential. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In other words, the statute as currently drafted criminalizes a large swath of behavior, some speech and some conduct. Some of the behavior is nonexpressive conduct, which is always unprotected by the First Amendment. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006) ("[W]e have extended First Amendment protection only to conduct that is inherently expressive."). Some of the behavior is speech, which under the narrowing construction that I propose would no longer be criminalized. Finally, some of the behavior is expressive conduct that the State can criminalize under *O'Brien*. The only remaining behavior that is of concern is expressive conduct that cannot be criminalized under *O'Brien*. Although the application of the statute to this last category of conduct is troubling, it is insufficient to invalidate the statute on its face because the amount of protected conduct is not substantial in relation to the statute's plainly legitimate sweep. *See Machholz*, 574 N.W.2d at 419 ("A statute should only be overturned as facially overbroad when the statute's overbreadth is substantial.").

Indeed, under the narrowing construction that I urge we adopt, many of the troubling applications of the statute the court mentions would no longer be criminalized. For example, the court concludes that the disorderly conduct statute prohibits "criticiz[ing] various political and racial groups ... as inimical to the nation's welfare," which is protected under *Terminiello v. City of Chicago*, 337 U.S. 1, 3, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). But the narrowed construction urged here limits the reach of the statute to conduct, not speech.

The court worries that the disorderly conduct statute criminalizes wearing a jacket with an offensive description, which is protected under *Cohen v. California*, 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). But this, too, would be outside the reach of the statute as narrowly construed because, as the Supreme Court of the United States concluded, Cohen's jacket was simply written speech, not conduct. *See id.* at 18, 91 S.Ct. 1780.

Next, the court argues that the disorderly conduct statute prohibits wearing black armbands to school, which is protected under *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). But the Supreme Court of the United States concluded that "no disturbances or disorders on the school premises in fact occurred" in *Tinker. Id.* at 514, 89 S.Ct. 733. Therefore, under the conduct-only narrow construction, the disorderly conduct statute would not prohibit wearing black armbands.

Lastly, the court argues that the disorderly conduct statute prohibits burning the American flag on a public street, which is protected under *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). But not all flag burning on public streets would be within the reach of the statute as narrowly construed. First, there would need to be an assembly or meeting

addressed the disturbing-a-meeting-or-assem-

bly clause of the statute.

on the street for the statute to apply. Second, the defendant would have to know that the flag burning would disturb the meeting.

And at any rate, a statute is not overbroad, and therefore *facially* unconstitutional, merely because one can conceive of impermissible applications. *Ferber*, 458 U.S. at 772, 102 S.Ct. 3348. Under the narrowing construction described above, the overbreadth is not substantial in relation to the statute's legitimate sweep. *See State v. Washington-Davis*, 881 N.W.2d 531, 539 (Minn. 2016). Therefore, it should not be struck down in its entirety.

### III.

Because I conclude that the statute is not facially overbroad as narrowly construed, I turn to Hensel's argument that it is nevertheless void for vagueness.

A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012); *see State v. Merrill*, 450 N.W.2d 318, 322 (Minn. 1990). But "it is not necessary that there be mathematical precision in the statement of the conduct required or prohibited." *State v. Simmons*, 280 Minn. 107, 158 N.W.2d 209, 211 (1968).

Notably, under the narrowing construction described above, the reach of the statute is limited to conduct that the defendant *knows* will disturb a meeting. This mens-rea requirement ensures that a person of ordinary intelligence would have fair notice

of prohibited conduct. *See Am. Commc'ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 413, 70 S.Ct. 674, 94 L.Ed. 925 (1950) ("[S]ince the constitutional vice in a vague or indefinite statute is the injustice to the accused in placing him on trial for an offense, the nature of which he is given no fair warning, the fact that punishment is restricted to acts done with knowledge that they contravene the statute makes this objection untenable."). Therefore, the statute is not unconstitutionally vague.

In short, Minn. Stat. § 609.72, subd. 1(2), can be narrowly construed to apply only to conduct that the defendant knows will disturb an assembly or meeting and the statute is therefore neither facially overbroad nor vague. I respectfully dissent.[3]

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.

---

**3.** Hensel also raises a challenge to the jury instructions that were given in this case, arguing that the district court erred by rejecting her request for a fighting-words instruction. But because I would not narrowly construe the statute to prohibit only fighting words, it was not error to refuse this instruction. *See State v. Devens*, 852 N.W.2d 255, 257 (Minn. 2014) ("[A] jury instruction is erroneous if it materially misstates the law.").